IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| SHANNON CHAPMAN,<br><br>　　Plaintiff,<br><br>vs.<br><br>CARMIKE CINEMAS, INC.,<br><br>　　Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br><br><br>Case No. 2:06-CV-948 TS |

Three matters are before the court: 1) Defendant's Motion for Summary Judgment;[1] 2) Plaintiff's Motion for Partial Summary Judgment;[2] and 3) Plaintiff's Motion to Strike.[3] For the reasons discussed below, Defendant's Motion will be granted and Plaintiff's Motions will be denied as moot.

I.　Factual Background

Plaintiff Shannon Chapman ("Chapman") was employed as a projectionist at the Ritz 15 theater when she was sexually assaulted by a co-worker, Walter McFashion ("McFashion"), on

---

[1]Docket No. 49.

[2]Docket No. 47.

[3]Docket No. 51.

1

May 25, 2004. Defendant Carmike Cinemas, Inc. ("Carmike") owns the Ritz 15. Bobbie Chapman ("Bobbie") is Shannon Chapman's mother. Scott Dunaway ("Dunaway") was a city manager for Carmike Cinemas between January 2002 and October 2005, when he was promoted to district manager. Alex Dickson ("Dickson") is the city manager for Carmike Cinemas. He manages three theaters in the area.

Carmike has a sexual harassment policy in its employee handbook and trains its employees on sexual harassment. Upon being hired, employees are required to sign paperwork indicating that they are aware of and understand the employee handbook, which includes the sexual harassment policy. The policy states:

> It is the responsibility of any employee who believes they have been subjected to harassment to promptly report the facts of the incident or incidents and the name(s) of the individual(s) involved by calling toll-free at 1-866-329-0557.[4]

This policy was posted in several places throughout the theater,[5] and Chapman attended at least one training session dealing with sexual harassment.[6] She also signed the Employee Handbook Acknowledgment Form, indicating that she read and understood the Handbook.[7]

Prior to May 25, 2004, Chapman complained to management once because McFashion propositioned her. She reported that incident to Dickson and Chris Faiette, the head projectionist, though neither have any recollection of her complaint. At work, Chapman participated in sexual conversations, including telling McFashion and Faiette that she was not

---

[4]Docket No. 50, Ex. 1.

[5]*Id.*, Ex. 2, at 57:2-4.

[6]*Id.* at 58:19-23.

[7]*Id.* at 53:13-18.

2

wearing any underwear,[8] telling McFashion that she had sex with her boyfriend in the theater,[9] and discussing sex with McFashion, Dickson, and Faiette.[10] Chapman also told McFashion she had ordered a Kama Sutra book, which she then brought to work and showed to McFashion.[11] Chapman stated that she was "pretty open about her sexual life"[12] and that she flirted at work with McFashion and her co-workers.[13]

On the night of the assault, Chapman was working in the projectionist booth when McFashion cornered her, led her to the parts room, and assaulted her. Immediately after the assault, Chapman contacted theater security. Chapman was visibly upset and eventually wrote down a statement regarding the assault, which was sealed in an envelope and locked in a safe. Chapman was instructed to take the next few days off, that her shifts would be covered, and told that she did not need to contact the police. Chapman never saw McFashion at work again.

McFashion was interviewed by Dunaway regarding the incident with Chapman. Based on that interview and Chapman's statement, Dunaway concluded that McFashion had violated the sexual harassment policy and McFashion's employment was terminated. McFashion received several laudatory letters of recommendation from Carmike employees after his termination. McFashion pleaded guilty to sexual assault and served jail time.

---

[8] *Id*. at 73:15-16.

[9] *Id*. at 120:17-20; *id*. at 147:8-10.

[10] *Id*. at 145:12-15; *id*. at 164:15-21.

[11] *Id*. at 166:8; *Id*., Ex. 10, at 45:5-9.

[12] *Id*., Ex. 9, at 5.

[13] *Id*., Exhibit 10, at 4:12-15.

Chapman returned to work and continued working at the Ritz 15 for another year. She complained to management about the sexual atmosphere at work, but did not recall any specific incidents. Bobbie complained about inappropriate activity she observed between employees while a patron at the theater. In her deposition, she states that she told a manager that she felt the atmosphere at the theater was generally inappropriate and sexually-charged.[14]

On September 30, 2004, Chapman filled out a "General Intake Questionnaire" with the Utah Anti-Discrimination & Labor Division ("UALD"). She listed May 25, 2004, as the first date of harm. She checked the "sexual harassment" and "intimidation" boxes on the form and indicated that the general manager had told others about her assault and that "nothing has been done to make employees aware of sexual harassment."[15] She also attached a statement to the questionnaire that described the assault. On October 6, 2004, Chapman filed a Charge of Discrimination with the UALD. In her Charge, Chapman listed May 25, 2004 as the latest date of discrimination.

## II. Procedural History

Chapman filed the instant lawsuit in state court on September 26, 2006, alleging three causes of action: 1) hostile work environment - sexual assault; 2) hostile work environment - pervasive sexual conduct; and 3) constructive discharge. The suit was later removed to this court.

---

[14]*Id.*, Ex. 14, at 52:21-24.

[15]*Id.*, Ex. 18, at 2.

On September 4, 2007, Chapman filed a Motion in Limine,[16] requesting that the Court enter an order pursuant to Rule 412 of the Federal Rules of Evidence that no witness may discuss Chapman's sexual activities or history as such discussions would be highly prejudicial.  This Court declined to rule on this motion at that juncture, while discovery was still ongoing, and issued an Order denying the motion without prejudice.[17]

Carmike's Motion for Summary Judgment was filed on October 31, 2007.  Chapman's Motion for Partial Summary Judgment was also filed on October 31, 2007, and asks the Court to strike eight of Carmike's eighteen defenses.  Chapman's Motion to Strike is related to the Motion in Limine already ruled on by this Court, and requests that certain paragraphs of Carmike's Memorandum in Support of its Motion for Summary Judgment be stricken pursuant to Rule 412 of the Federal Rules of Evidence.

III.   Discussion

A.   Summary Judgment

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[18]  In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[19]  The Court is

---

[16]Docket No. 40.

[17]Docket No. 46.

[18]*See* Fed. R. Civ. P. 56(c).

[19]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[20]

    B.    Title VII

Title VII of the Civil Rights Act prohibits hostile work environment sexual harassment by an employee's supervisor.[21] An employer is vicariously liable for sexual harassment by a supervisor. However, when no tangible employment action is taken, an employer's liability is subject to an affirmative defense which looks to whether 1) the employer exercised reasonable care to prevent and correct any sexually harassing behavior, and 2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer.[22] On a consideration of a totality of the circumstances, the harassment must be sufficiently severe or pervasive to alter the conditions of the employment and create a subjectively and objectively abusive working environment.[23] If an employer cannot be held vicariously liable, then the court need not consider whether a hostile work environment existed.[24]

Chapman argues that Carmike is liable for the sexually-pervasive atmosphere at the Ritz 15 that led to McFashion's assault, for the assault itself because McFashion posed a known threat, and for the constructive discharge of Chapman that resulted from "the psychological

---

[20]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.,* 925 F.2d 1288, 1292 (10th Cir. 1991).

[21]*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 672 (10th Cir. 1998).

[22]*Burlington Ind., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

[23]*Id*.

[24]*Ford v. West*, 222 F.3d 767, 775 (10th Cir. 2000) (in the absence of employer liability, court need not reach issue of hostile work environment).

fallout from the assault."[25]  Carmike argues that because Chapman did not report any sexually harassing behavior prior to the assault, it could not have had notice of sexual harassment or any threat McFashion may have posed.  Carmike also argues that Chapman was not constructively discharged because she voluntarily quit a year after the assault.  Carmike contends that, in any case, some or all of Chapman's claims are procedurally barred because she has not exhausted her administrative procedures.

        1.        Procedural Bar

"Title VII requires a plaintiff to file a discrimination complaint with the EEOC within 180 days or with a state agency within 300 days of the complained-of conduct."[26]  "A plaintiff must generally exhaust his or her administrative remedies prior to pursuing a Title VII claim in federal court."[27]  "It is fundamental law that a plaintiff may not assert a Title VII claim with respect to conduct not first asserted in a discrimination charge filed with the EEOC."[28]  However, amendments that relate back to the original charge can be considered timely, even if the amendment takes place after the deadlines for filing have passed.[29]

Carmike asserts that Chapman's allegations of hostile work environment and constructive discharge are procedurally barred because she did not assert these in her Charge of Discrimination filed with the UALD, nor did she amend the Charge to include any activity that

---

[25] Docket No. 53, at 32.

[26] *Gunnell v. Utah Valley State College*, 152 F.3d 1253, 1260 n.3 (10th Cir. 1998).

[27] *Simms v. Ok. ex rel. Dept. of Mental Health*, 165 F.3d 1321, 1326 (10th Cir. 1999).

[28] *Holmes v. Utah Dept. of Workforce Servs.*, 483 F.3d 1057, 1070 (10th Cir. 2007).

[29] *Simms*, 165 F.3d at 1326.

may have occurred after May 25, 2004. Chapman argues that the Charge of Discrimination was timely filed with respect to all claims.

### a. Hostile Work Environment

Chapman's UALD filings listed May 25, 2004, as the first *and* last date of harassment. The statement attached to the questionnaire detailed the assault but not any other sexual harassment. The statement in the UALD Charge of Discrimination discusses the atmosphere at work after the assault. Therefore, the Court finds that even though the dates noted on both forms are somewhat confusing, and the attached statement deals only with the assault itself, Chapman adequately asserted post-assault activity in both the questionnaire and the Charge such that she satisfied the administrative exhaustion requirement with respect to hostile work environment. Therefore, that claim is not procedurally barred.

### b. Constructive Discharge

Chapman did not make any reference to constructive discharge in her UALD documents because she had not yet left her employ at the Ritz 15 when she filed the charges. She did not file an amendment to her Charge once she left the Ritz 15. Therefore, because Chapman failed to assert a claim regarding constructive discharge in her UALD filings, and she did not file an amendment to those claims, she is procedurally barred from raising such a claim at this point. The Court finds that summary judgment in favor of Defendant is proper on Plaintiff's third cause of action.

### 2. *Faragher/Ellerth* Defense

When no tangible employment action has been taken, an employer can avoid vicarious liability by proving that reasonable care was exercised to prevent and promptly correct any sexually harassing behavior and that the employee failed to take advantage of protective or

corrective procedures to avoid harm.[30] An employer is "obligated to respond to harassment of which it actually knew, or in the exercise of reasonable care should have known. . . . Actual knowledge will be demonstrable in most cases where the plaintiff has reported harassment to management-level employees."[31] An employer may have constructive knowledge when the pervasiveness of sexual harassment leads to an inference of knowledge."[32] "Only when acts of harassment are so egregious, numerous, and concentrated as to add up to a campaign of harassment will the employer be liable for failure to discover the harassment."[33]

        a.        Pre-assault and assault

Chapman does not assert that any tangible employment action took place prior to the assault. She also does not assert that McFashion was *her* supervisor.[34] Chapman did not complain to her managers about McFashion or a sexually-pervasive atmosphere until after the assault, with the exception of the proposition statement she related to Dickson. She states that prior to the assault, she viewed McFashion as a father figure, that they were friends, and she hugged him every day that they worked together.[35] Chapman also states that one of the managers at the Ritz 15 was shocked to hear that McFashion had assaulted Chapman.[36] The Court finds

---

[30] *Ellerth*, 524 U.S. at 765.

[31] *Adler*, 144 F.3d at 673.

[32] *Id*.

[33] *Ford*, 222 F.3d at 776 (quoting *Adler*, 144 F.3d at 675) (internal quotations omitted).

[34] Docket No. 50, Exhibit 2, at 43:25; *id*. at 44:1-17.

[35] *Id*. at 121:7-9; *id.* 64:17-24.

[36] *Id*. at 175:22.

that the single statement made to Dickson could not have been construed as a complaint of sexual harassment. Chapman failed to avail herself of the procedures for reporting complaints to Carmike. As discussed above, those procedures were outlined in the employee handbook, on posters on the walls of the theater, and Carmike's employees, including Chapman, received training with respect to those policies. Therefore, Carmike was not on notice of any sexual harassment prior to the assault nor on notice of any danger that McFashion may pose.

       b.  Post-assault response

"An employer is not strictly liable for all harassment of which it actually or constructively knew; it may discharge its obligation by taking appropriate remedial or preventative action."[37] The court is to inquire as to "whether the remedial and preventative action was 'reasonably calculated to end the harassment.'"[38]

Chapman argues that Carmike failed to adequately respond to the assault because she was told she "didn't need call the police" after the assault,[39] Carmike did not act in a reasonable period of time, and several letters were written by Carmike employees after the assault that were favorable towards McFashion. Carmike argues that it promptly took action to end the harassment by instigating an investigation and terminating McFashion.

The Court agrees with Carmike that the action taken was reasonably calculated to end the harassment. Chapman does not dispute that after the May 25 incident, Chapman and McFashion never worked together at the Ritz 15 again. She also does not dispute that McFashion was

---

[37]*Adler*, 144 F.3d at 675.

[38]*Id.* at 676 (quoting *Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir. 1991)).

[39]Docket No. 48, ¶ 31.

interviewed and terminated as soon as Carmike concluded that McFashion had violated the harassment policy.  The letters about McFashion, written after his termination, were not related to Chapman and cannot be considered evidence of a failure to adequately respond.  Therefore, the Court finds that Carmike's response to the harassment was appropriate and reasonable.  The Court grants summary judgment on Chapman's first cause of action in favor of Carmike.

          c.        Post-assault hostile work environment

Chapman's briefs focus on the hostile work environment that existed prior to, and was the purported cause of, the assault, as well as the assault itself.  However, Chapman's UALD filings focus only on the working environment after the assault, while also discussing the assault itself.  As previously discussed, Carmike has a valid affirmative defense with respect to the time period prior to the assault.  However, because Chapman made reference to the post-assault environment in her filings, the Court must consider those charges.

"Whether an environment is hostile or abusive can be determined only by looking at all of the circumstances."[40]  Evaluating a hostile work environment requires "common sense, and an appropriate sensitivity to social context, to distinguish between simple teasing and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive."[41]

The evidence cited by Chapman as to a sexually-pervasive work environment post-assault is largely based on statements made by Bonnie Cates, Chapman's aunt, and Bobbie Chapman, her mother.  Bonnie Cates was employed at Carmike until 2003.  Therefore, her statements are not applicable to the post-assault time period.  Bobbie, who was not a Carmike employee,

---

[40] *O'Shea v. Yellow Tech. Servs. Inc.*, 185 F.3d 1093, 1098 (10th Cir. 1999).

[41] *Burns v. Snow*, 130 Fed. Appx. 973, 984 (10th Cir. 2005).

complained of Carmike employees showing affection inappropriate for the workplace, which she observed while visiting her daughter at work. She reported at least one incident to a Carmike manager. The Court finds that the instances recounted by Bobbie in her deposition were not so egregious or numerous such that a reasonable person would find them severely hostile or abusive.

The only remaining evidence of a post-assault hostile work environment are Chapman's statements in her UALD documents. Chapman's counsel does not address the post-assault time in the briefing for these motions, other than with respect to the letters that were written on McFashion's behalf by Carmike managers. In her deposition, Chapman states that sexual jokes were told every day, but she cannot recall any specific sexual joke told in her presence.[42] Chapman states in her brief that her "deposition shows that she reported to her managers, on numerous occasions, her view that the randy comments which permeated the workplace were inappropriate," but does not provide specific citations.[43] The Court found two such occasions referenced in her deposition. She states that she told the managers who were telling sexual jokes that she thought the jokes were inappropriate.[44] She also states that she told four managers who were rating the appearance of female customers that she thought their behavior was inappropriate.[45] She did not complain to upper management about these incidents.[46]

---

[42] Docket No. 50, Ex. 2, at 124:5-7; *id*. at 131:9-13.

[43] Docket No. 56, at 3.

[44] Docket No. 50, Ex. 2, at 131:19.

[45] *Id*. at 139:7-8.

[46] *Id*. at 132:5-9.

As outlined above, Chapman's deposition and the report she made to the police also indicate that Chapman participated in sexual conversations and behavior while at work. In *Burns*, the Tenth Circuit considered a plaintiff's participation in sexual banter at work as part of the "constellation of surrounding circumstances" for evaluating a sexual harassment claim, and determined that the plaintiff could not have experienced a severely hostile work environment.[47] The Court finds that Chapman cannot demonstrate that a reasonable person would have considered the atmosphere at the theater, post-May 25, 2004, a hostile work environment and that because she participated in the sexual banter at work, under *Burns*, summary judgment on the second cause of action is appropriate.

    C.    Rule 412

Chapman has filed a Motion to Strike, related to her previously-filed Motion in Limine, regarding the admissibility of evidence with respect to her sexual activity, behavior, and banter at the workplace. Defendant argues that a Rule 412 motion is premature and that the bulk of the evidence in question is based on Chapman's own testimony.

Rule 412 states that evidence offered to show the victim engaged in other sexual behavior or to prove any alleged victim's sexual predisposition is not admissible.[48] However, in a civil case, such evidence is admissible if two conditions are met: 1) the evidence is otherwise admissible, and 2) the probative value of the evidence substantially outweighs the danger of harm to any victim and of unfair prejudice to any party.[49] The Tenth Circuit has considered

---

[47]*Burns*, 130 Fed. Appx. at 985.

[48]Fed. R. Evid. 412.

[49]Fed. R. Evid. 412(b)(2).

evidence of the plaintiff's sexual history in sexual harassment cases at the summary judgment stage.[50]  The Court notes that much of the evidence is Chapman's own statements, which are taken as true for the purposes of summary judgment.  Thus, the Court finds that, for the purposes of summary judgment, this evidence is properly before the court and will not be stricken from the filings.

<div align="center">IV.   Conclusion</div>

For the foregoing reasons, it is therefore

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 49) is GRANTED.  It is further

ORDERED that Plaintiff's Motion for Partial Summary Judgment (Docket No. 47) and Motion to Strike (Docket No. 51) are DENIED as moot.

The Clerk of the Court is directed to enter judgment in favor of Defendant and against Plaintiff and close this case forthwith.

DATED   February 19, 2008.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[50] *Ferencich v. Merritt*, 79 Fed. Appx. 408, 414-415 (10th Cir. 2003); *Burns*, 130 Fed. Appx. at 985.